United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HANJIN SHIPPING CO., LTD.,

        Plaintiff,

  v.

CENTRAL BIO-ENERGY
INTERNATIONAL CORP. et. al.,

        Defendants.
_____/

No. C-10-1344 JCS

**REPORT & RECOMMENDATION RE PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**
**[Docket No. 18]**

## I.    INTRODUCTION

In this breach of contract case involving the maritime shipment of corn and bulk grain, Plaintiff Hanjin Shipping Co., Inc. (hereafter "Plaintiff") brings a Motion for Default Judgment ("Motion) Against Defendants Central Bio-Energy International Corp. ("Central"), and Hirsch Capital Corporation ("Hirsch") (collectively "Defendants") in which it seeks default judgment in the amount of $213,734.09 including interest and costs.[1]  A hearing on the Motion was held on Friday, December 10, 2010 at 8:30 a.m at which counsel for Plaintiff appeared.  Defendants did not appear at the hearing.  For the reasons stated below, it is recommended that the Motion be GRANTED.

---

[1] Plaintiff initially sought $203,343.99.  At the hearing on Plaintiff's Motion, the Court requested further documentation to substantiate the amount sought by Plaintiff.  Plaintiff has since corrected the total amount for which it seeks a default judgment in the second Declaration of Jenni Hong (hereafter "Hong II Decl."), filed December 20, 2010.  In addition, although Plaintiff includes a request for "interest and costs," no evidence of entitlement to prejudgment interest or costs has been submitted to the Court.  Therefore, prejudgment interest and costs are not included in this Order.

## II. BACKGROUND

On October 16, 2009, Central/Hirsch contracted with Hanjin to transport by ocean carriage thirty-five (35) containers, under Central/Hirsch's load and count, containing "Grain in Bulk," from the Port of Long Beach, California, to Busan, Republic of Korea (hereafter referred to as "Shipment 1"). Complaint, ¶ 6; Declaration of Jenni Hong in Support of Application for Default Judgment (hereafter referred to as "Hong Decl.") at ¶ 3. In connection with Shipment 1, Hanjin issued Bill of Lading number HJSCLGBA24363502. Complaint, ¶ 6; Hong Decl., Exh. A. On October 30, 2009, Central/Hirsch contracted with Hanjin to transport by ocean carriage forty (40) containers, under Central/Hirsch's load and count, containing "U.S. Yellow Corn," from the Port of Long Beach, California, to Busan, Republic of Korea (hereafter referred to as "Shipment 2"). Complaint, ¶ 7; Hong Decl., ¶ 3. In connection with the second shipment, Hanjin issued Bill of Lading number HJSCLGBA24291105. *Id.* The demurrage rates that apply to shipments made under the Service Contract are listed in Essential Terms Tariff HJSC-300, which is incorporated by reference on page 4 § 12.A of the Service Contract. Hong II Decl., ¶ 6.

Hanjin alleges that it fully performed its contractual obligations to Central/Hirsch by transporting each of the two above-described shipments by ocean and discharging the Freight in Busan, Republic of Korea. Complaint, ¶ 8; Hong Decl., ¶ 5. The Defendants had originally arranged for a consignee to take the commodities shipments after Defendants paid freight and destination charges pursuant to the Service Contract. Hong II Decl., ¶ 5. However, Hanjin did not immediately release the shipments to the consignee because the Defendants failed to pay the freight and demurrage fees that were accruing. *Id.* The shipments were therefore retained in the Republic of Korea where demurrage, storage and related costs accrued. Complaint, ¶ 10; Hong Decl., ¶ 6. Thereafter, Hanjin negotiated with the consignee and released the shipments to the consignee in exchange for freight and destination charges only. Hong II Decl., ¶ 5. The demurrage was not paid by Defendants pursuant to its Service Contract with Hanjin, and therefore just the demurrage amount remains outstanding, and is the subject of the present Motion for Default Judgment. *Id.*

On March 30, 2010, Hanjin filed its Complaint against Central/Hirsch alleging Breach of Contract. *See* Docket No. 1. Service of the summons and complaint was made by personal service.

*See* Docket No. 2. On April 12, 2010, Plaintiff's counsel caused the Complaint and Summons in this action to be served upon Hirsch. Hirsch did not appear in the action. Declaration of Mitchell S. Griffin in Support of Application for Default Judgment (hereafter referred to as "Griffin Decl."), ¶ 2. On April 20, 2010, the Complaint and Summons in this action were served upon Central. Central did not appear in the action. Griffin Decl., ¶ 3.

Default as to Defendant Central was entered by the Clerk of the Court on May 24, 2010. *See* Docket No. 9. Default as to Defendant Hirsch was entered in this Court on May 28, 2010. *See* Docket No. 11.

The total demurrage from Central/Hirsch's consignee's failure to receive the Freight was KRW483,552,000.00 (in Koren Won), to which Hanjin applied a fifty percent discount. Hong II Decl., ¶12. The resulting demurrage amount is KRW241,776,000. *Id*. In U.S. Dollars (applying the foreign exchange rate reported by the U.S. Department of Treasury for June 18, 2010) the total amount is $213,734.09. The demurrage rate in this case is based upon the demurrage rate agreed to by the parties in the applicable Service Contract. Hong II. Decl., ¶¶ 7-8.

Neither Plaintiff nor Plaintiff's counsel has received a pleading responsive to the Summons and Complaint from or on behalf of Central/Hirsch as of the filing of the present Motion for Default Judgment. Griffin Decl., ¶¶ 5-6. Plaintiff therefore requests that default judgment be entered in its favor in the amount of $213,734.09. Hong II Decl., ¶ 12.

**III.  ANALYSIS**

    **A.  Legal Standard Regarding Entry of Default Judgment**

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, the court may enter a default judgment where the clerk, under Rule 55(a), has previously entered the party's default based upon failure to plead or otherwise defend the action. Fed. R. Civ. P. 55(b). A defendant's default, however, does not automatically entitle the plaintiff to a court-ordered default judgment. *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). The district court has discretion in its decision to grant or deny relief upon an application for default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Lau Ah Yew v. Dulles*, 236 F.2d 415, 416 (9th Cir. 1956) (affirming district court's denial of default judgment). The court may consider the following factors in deciding

3

whether to enter a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

In considering the sufficiency of the complaint and the merits of the plaintiff's substantive claims, facts alleged in the complaint not relating to damages are deemed to be true upon default. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977); Fed. R. Civ. P. 8(d). On the other hand, a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). As a result, where the allegations in a complaint are not "well-pleaded," liability is not established by virtue of the defendant's default and default judgment should not be entered. *Id.*

Damages or other forms of relief awarded are constrained by the rule that judgment by default "must not be different in kind from, or exceed in amount, what is demanded in the [complaint]." Fed. R. Civ. P. 54(c).

**C.    *Eitel* Factors**

**1.    Possibility of Prejudice to Plaintiff**

To the extent that Defendants have failed to appear in and otherwise defend this action, Plaintiff will be left without a remedy if default judgment is not entered in its favor. This factor therefore favors entry of default judgment.

**2.    Excusable Neglect**

There is no evidence in the record that Defendants' failure to appear and otherwise defend was the result of excusable neglect. Rather, Defendants failed to appear after being served with the Complaint in this action, indicating that their failure to appear was willful. This factor favors entry of default judgment.

4

### 3. Allegations and Substantive Merits of Claims

#### i) Breach of Contract

This case is a maritime breach of contract of carriage. As an initial matter, the Court notes that the present case involves the shipment of goods by sea and is thus "the sort of traditional maritime activity which falls squarely within the district court's admiralty jurisdiction." *C-ART, Ltd*, 940 F.3d at 532. A contract is treated as a contract of carriage by sea when the primary objective of it is to transport goods by sea from one port to another. *Norfolk S. Ry. Co. v. James N. Kirby Pty. Ltd.*, 543 U.S. 14 (2004). A bill of lading under maritime law is a valid contract of carriage. *Id.*; *C-ART, Ltd. v. Hong Kong Islands Line America, S.A.*, 940 F.3d 530, 532 (9th Cir. 1991). Thus, an action on a bill of lading is a contract case. *Id.*

Defendants Central/Hirsch is listed as "shipper/exporter" on a valid bill of lading generated by Hanjin; "Hanjin Shipping" appears in the top left corner of said bill of lading. *See* Exhibit A to Hong Decl.; see also, Hong II Decl., Exh. 1 (Service Contract). Central/Hirsch is also listed as "shipper/exporter" on a second valid bill of lading generated by Hanjin. *See* Hong Decl., Exh. B. The damages suffered by Hanjin are the direct result of Defendants' failure to pay freight and destination charges pursuant to the valid contract between Plaintiff and Defendants. Accordingly, the Court concludes that Plaintiff is entitled to default judgment on its breach of contract claim.

#### ii) A Common Carrier is Liable Not only for the Freight Charges but Also for Storage

Demurrage refers to "the cost assessed by a vessel owner . . . for delays in cargo loading or unloading beyond the 'laytime' permitted for cargo operations under [a contract]." *BP W. Coast Prods. v. Alaska Tanker Co.*, 2003 WL 23335932 at *1, n.1 (W.D. Wash. 2003). Post-delivery charges resulting from freight being left at port are an extension of ocean freight charges for which the shipper is liable. *Ocean Transport Line v. American Philippine Fiber Industries*, 743 F.2d 85, 92 (2d Cir. 1984); *Gulf Puerto Rico Lines v. Associated Food Co.*, 366 F.Supp. 631, 635 (D.P.R. 1973). The shipper is also liable for prejudgment interest on outstanding ocean freight charges. *Kerr S.S. Co. v. Petroco, Inc.*, 1991 AMC 2193, at 5 (S.D.N.Y. 1991). Furthermore, if a shipper uses a third party for payment, the shipper assumes the risk of nonpayment of the goods. *See Hawkspere*

5

*Shipping Co. Ltd., v. Intamex, S.A.*, 330 F.3d 225, 235 (4th Cir. 2003).

Here, the evidence before the Court demonstrates that Plaintiff Hanjin successfully delivered the freight listed on each bill of lading and thus performed under the applicable contracts. Hong Decl. at ¶ 5. Plaintiff alleges that Defendants' failure to pay the freight and destination charges resulted in the accrual of demurrage costs. Hong II Decl., ¶ 5. The damages sought by Hanjin are the direct result of Defendants' failure to pay the freight and demurrage fees. Therefore, the Court concludes Plaintiff is entitled to default judgment on its contract claims.

### D. Damages

The demurrage fees incurred by Plaintiff as a direct result of Defendants' breach are $213,734.09.[2] *See* Hong II Decl. at ¶12. These values are based on the foreign exchange rate reported by the United States Department of Treasury for June 18, 2010 (1,131.2000 South Korean Won (KRW) to one U.S. Dollar).

## IV. CONCLUSION

It is recommended that the Court GRANT the Motion. Default judgment should be entered against all Defendants on Plaintiff's maritime breach of contract claims in the amount of $213,734.09. Defendants shall be jointly and severally liable.

Dated: January 10, 2011

JOSEPH C. SPERO
United States Magistrate Judge

---

[2] The total demurrage is based upon daily demurrage rates that are listed in the Tariff (incorporated by reference in the Service Contract) and apply to all 75 containers in Defendants' shipment: KRW12,000 for the first ten days and KRW24,000 thereafter. Hong II Decl., ¶ 8.

6